Case 1:06-cv-01077-RWR   Document 11-7   Filed 02/06/2007   Page 1 of 13

# Exhibit 6

UNITED STATES DEPARTMENT OF AGRICULTURE
COMMODITY CREDIT CORPORATION

In re: SINGLE STICK, INC.
Appeal of Tobacco Transition Payment
Program Assessments CR05100007
CR05200005, and CR05300004.

Hearing Officer: Charles M. Berge

## POST-HEARING STATEMENT

Pursuant to Tobacco Transition Assessment Hearing Rule of Conduct (a)(4), appellant SINGLE STICK, INC. ("Appellant"), through its counsel GREENBERG TRAURIG LLP, submits this post-hearing statement.

I. INTRODUCTION

The United States Department of Agriculture Commodity Credit Corporation (USDA) determination dated July 6, 2005 that no revisions are warranted to Tobacco Transition Payment Program (TTPP) Assessments CR05100007 and CR05200005, and its determination dated October 24, 2005 that no revisions are warranted to TTPP Assessment CR05300004, are arbitrary, capricious, and contrary to law. Therefore, Appellant is entitled to the following relief:

1. Remand for recalculation of all TTPP Assessments in compliance with Section 625 of the America Job Creation Act of 2004 (Pub. L. 108-357) (the "Act"). The Act prohibits assessment "in excess of the manufacturer's or importer's share of domestic volume," and requires market share to be determined based on removed volume (not merely "stick count") to appropriately differentiate between "little" and "large" cigars.



2. Alternatively, recalculation of the assessments using only reliable, competent, and complete market information. USDA has estimated Appellant's market share at 4.81% (3d Q. 2004)(R-26), 6.45% (1st Q. 2005)(R-13), and 7.78% (2nd Q. 2005)(R (App)-11). However, the only evidence in the record establishes Appellant's actual market share, if properly calculated, ranges between 1.05% and 2.5%.

3. Cancellation of all interest charges.

4. Amortization of losses from liquidation of loan collateral in the same manner and fashion as the direct buy-out payments, over the entire ten year period of the liquidation program.

II. THE EVIDENTIARY RECORD.

These facts are uncontested.

1. Appellant sells "small" or "little" cigars as defined at 26 U.S.C.§ 5701(2005)(three pounds or less tobacco per thousand). R (App)-241 ¶2.

2. USDA has assessed Appellant's share of the domestic cigar market ("small" and "large" cigars combined) at 4.81% (3d Q. 2004)(R-26), 6.45% (1st Q. 2005)(R-13), and 7.78% (2nd Q. 2005)(R (App)-11).

3. These assessments are having a significant economic impact on Appellant. R (App)-241 ¶3.

4. The assessments were calculated by dividing the number of cigars Appellant sold ("stick count") by the total number of cigars sold in the United States, not on the basis of the volume or amount of tobacco removed. R (FSA)-10.

5. USDA treats one "little" cigar as the equivalent of one "large" cigar for assessment purposes, despite the fact that a little cigar removes a fraction of the tobacco removed by a large cigar. R (App) - 241-3, ¶¶2, 9-10.

6. Taking into account tobacco removals, Appellant and all others similarly situated pay a disproportionately large share of the cigar assessment. See R (App) - 242-3 ¶¶ 9-10.

7. USDA's estimate of the number of sticks sold by Appellant is accurate. R-81 - 188.

8. USDA knew its estimate of the total number of cigars sold (total market size) was inaccurate when it assessed Appellant. R (FSA) - 9.

9. Appellant's actual market share, based upon the most reliable commercially available point of sale data source, the A.C. Nielsen survey, is approximately 1.05% - 2.5%. See R-20 ¶¶ 7-9; R (App) - 28, 32, 39, 53, 103, 166, 241-2 ¶¶ 4-5.

10. Industry believes the A.C. Nielsen survey to be the most accurate "real time" source of information available. Empirical, market experience has demonstrated the reliability of A.C. Nielsen survey data. Investment, marketing, and other business decisions are made using this information. R (App.) 241 ¶ 4.

11. Appellant has not been given access to the raw data USDA used to calculate market size. R (App)-228, 230, 242 ¶¶ 6-8.

12. USDA has not disclosed all of the data sources it used to calculate market size. R (App)-230, 242 ¶ 6.

3

13. There is no evidence in the record demonstrating that USDA's data is accurate or reproducible. See R (App) - 242 ¶¶ 6-8.

14. Appellant's inability to test and reproduce USDA's calculation of market size has materially impaired its ability to pursue this appeal. R (App) - 242 ¶¶ 6-8.

15. The USDA's current assessment approach, solely based on stick count, deviates from traditional regulatory practice, and disproportionately burdens Appellant and other similarly situated "little" or "small" cigar manufacturers and importers because (a) little cigars remove a fraction of the amount of tobacco into commerce as large cigars, and (b) stick count assessment has a disparate impact on the little cigar market. For example, although little cigars constitute only 5% of the total cigar market, little cigar manufacturers appear to be paying over 30% of the total cigar assessment. R (App.) 242-3, ¶¶ 9-10.

III. ARGUMENT

    A. <u>USDA Has Improperly Assessed Little Cigars, Improperly Burdening Appellant.</u>

Federal law and federal agencies have long distinguished between small and large cigars for regulatory and tax purposes. R (App) - 241-3, ¶¶ 2, 9-10. As Appellant demonstrated during the informal hearing, the law recognizes this distinction because each little cigar removes but a fraction of the tobacco into commerce as a large cigar.[1] Id.

---

[1] For example, the Federal Trade Commission distinguishes between "Little Cigars" which contain less than 3 lbs of tobacco per 1,000, "Medium Cigars" containing 3 to 10 lbs of tobacco per 1,000, and "Large Cigars" containing more than 10 lbs of tobacco per 1,000. See P.L. 93-109 (defining "Little Cigars" to mean any roll of tobacco wrapped in leaf tobacco....as to which one thousand units weigh not more than 3 pounds").

4

Consequently, Congress preserved this long-standing distinction by directing USDA to assess cigar manufacturers and importers based on the amount of tobacco each removes into commerce, and not on the number of sticks sold.

The touchstone of the Act's assessment regime is the term "gross domestic volume." Act § 625(a)(2) defines "gross domestic volume" to mean *"the volume"* - not *the number* - of non-tax exempt tobacco products removed from commerce. Act § 625(e), governing assessment within each class of tobacco product, specifically states that assessments are to be made based on shares of "gross domestic volume," and that assessments may not exceed a party's share thereof. Furthermore, Act § 625(g)(2) specifically provides "The volume of domestic sales shall be calculated based on gross domestic volume."

In contravention of the Act's plain language, USDA assessments in this case are based solely on the number of sticks sold, rather than on the volume of tobacco removed into commerce. See 7 C.F.R. 1463.7(b)(1).[2] Without legal or factual basis, USDA has arbitrarily and capriciously determined that little and large cigars should be treated identically for assessment purposes. As a result, Appellant and other little cigar manufacturers and importers have been substantially, and wrongly, over-assessed.[3]

---

[2] USDA in fact made at least one request for removed volume data from Appellant, which Appellant dutifully provided. In a subsequent phone call, however, USDA advised Appellant to report stick count information only. See R (App) - 26-7. Among other things, these communications demonstrate USDA had access to removed volume data, and could easily have assessed in compliance with the Act, had it so desired.

[3] R (FSA) - 30 and 31 show the huge gap in removed volume, and relative market share, between large and little cigars. For example, R (FSA)-31 suggests the total market share for little cigars, calculated on the basis of removed volume, is less than 3% of the total cigar market. By contrast, USDA's approach, which focuses solely on stick count, allocates little cigars approximately 36% of the cigar market.

Exhibit 1 demonstrates the extent of the illegal burden USDA has imposed on Appellant. Using excise taxes as a surrogate for the volume of tobacco removed, and accepting USDA's estimate of market share as accurate, the numbers demonstrate Appellant has been over-assessed by a factor of nearly ten. When assessed based on excise taxes, Appellant's total obligation is approximately $255,944.00. When assessed solely on stick count, in violation of the statutory command that assessments must be based on volume removed, Appellant's total obligation exceeds $2,036,626.00.

To comply with the Act's plain language, USDA should have assessed using a three-step process appropriately based on removed volume. Step one should have been calculation of the volume of tobacco removed for little and large cigars, respectively. See R (FSA)-30. Step two should have been an allocation within the cigar class based on the percentage share of the removed volume for each product type. See R (FSA)-31. Step three should have been calculation of each manufacturer's or importer's market share within the little or large cigar category, as appropriate, based on stick count in accordance with Act § 625(f)(3)(A). USDA, by relying solely on stick count, arbitrarily and capriciously short-circuited the statutory scheme, and illegally burdened Appellant.

B.  USDA Has Improperly Discriminated Against Appellant.

As demonstrated during the informal administrative hearing, there is no rational basis for USDA's failure to differentiate between little and large cigars for assessment purposes. As the affidavit of James Deer demonstrates, this failure imposes an undue burden on little cigar manufacturers and importers. See Exhibit 2. Therefore, USDA's assessments illegally discriminate against Appellant and others similarly situated, and should be vacated.

C.   USDA's Assessments Were Unauthorized And Illegal.

Section 625(e)(2) of the Act prohibits TTPP assessments "in excess of the manufacturer's or importer's share of domestic volume." USDA was required to obtain information from *all* – not some or most – domestic manufacturers and importers of tobacco products, *before* it assessed appellant. As USDA has admitted, it issued assessments based on incomplete data, and overstated appellant's market share. R (FSA)-9; R (App) - 238-40, 242 ¶¶ 5-7.

Additionally, USDA's practice of exempting low volume sellers exacerbated its over-estimation of Appellant's market share. USDA has apparently recognized and will correct this methodological flaw, and end its illegal practice. See R (App) - 238. Nevertheless, USDA has wrongly refused to recalculate prior assessments. Consequently, it continues to demand illegally inflated payments from Appellant.

The challenged assessments, knowingly made based on over-estimated market share, were unauthorized and illegal, and must be struck down. Furthermore, USDA lacks the authority to impose interest charges on Appellant due to Appellant's refusal to pay an illegal assessment. USDA should be directed to comply with the law, and recalculate as required by statute.

D.   USDA Has Vastly Overstated Appellant's Market Share.

USDA assessments are calculated by determining the number of cigars sold by a manufacturer's or importer's cigar "stick count" in a given quarter (the numerator), and then dividing that sum by the total number of cigars sold in the United States during that quarter (the denominator). See R - 9, (FSA) 33-4. The record establishes USDA's numerator in this case - Appellant's "stick count" - is correct. See R. 81-189. However,

the record is bare of evidence that USDA's denominator is accurate. In fact, the only competent record evidence is USDA's denominator is incorrect, and as a result, it has vastly overstated Appellant's market share.

The A.C. Nielsen survey data, which uses SKU cash register scans to determine the number of cigars sold, demonstrates Appellant's market share (primarily from sales of the "Prime Time" brand) for the period April 24, 2004 – October 8, 2005 ranged from approximately 1.05% to no more than 2.5%. See R-20 ¶¶ 7-9; R (App) - 28, 32, 39, 53, 103, 166, 241-2. USDA, on the other hand, claims Appellant's market share was 4.81% in October – December, 2004, 6.45% in January – March, 2005, and 7.78% in March - June, 2005. R-13, 26; R (App) - 11.

The number of cigars sold by Appellant is not disputed. At issue is Appellant's relative share of the relevant market. Because USDA has not made available the raw data it used to calculate market size, nor fully disclosed all data sources, the record is absolutely bare of *any* evidence that would allow an independent trier of fact to evaluate the accuracy, reliability, and reproducibility of USDA's market estimate. USDA's market estimate cannot be peer reviewed, the statistical soundness of its assessment cannot be evaluated, and its demand upon Appellant therefore cannot be justified. See R (App.) - 242, ¶¶ 5-8. In this case, the only verifiable and testable market share evidence is the A.C. Nielsen data; USDA has not placed into the record any evidence demonstrating that its estimate of the market is in fact accurate. Therefore, on the weight of this evidence alone, Appellant's appeal should be granted.

    E.    <u>USDA's Failure To Make Available Complete Removal Data And To Disclose Data Sources Violates Appellant's Statutory and Due Process Rights.</u>

8

Act § 625(f) provides each assessment must be calculated by multiplying a company's total market share - meaning its share of "gross domestic volume" - by the total amount of the assessment for a tobacco class. "Gross domestic volume" is measured by the volumes of gross removals and/or tax information, as appropriate. See Act § 625(h)(2); see also R-26 (calculating assessment based on "gross removals"); but see R-13 (assessment based on share of "Volume of Gross Sales"); R (App)-11 (assessment based on share of "Volume of Gross Sales"). Notably, in the preamble to the final rule promulgated as 7 C.F.R. Part 1463, USDA stated that it would use information obtained from the Department of the Treasury (Treasury) and from the Department of Homeland Security (DHS) to calculate market share. 70 Fed. Reg. 7007-8 (Feb. 10, 2005).

USDA has refused to make public the underlying data and data sources it used to calculate total removals. See, e.g., R (App) - 19, 21, 228, 230. Appellant does not know what Treasury or DHS data USDA actually used in developing the assessments, whether the data are either publicly available, or if the data are accurate. Consequently, Appellant can neither test the accuracy of USDA's estimate of "total volume," nor determine whether USDA has complied with the Congressionally-mandated formula for calculating market share. See R (App) - 242 ¶¶ 6-8.

Because USDA has not calculated removals in a transparent manner, Appellant neither has the ability to effectively evaluate the validity of the USDA's assessment, nor access to the information needed to prepare a meaningful appeal as allowed by statute. R (App.) - 242, ¶ 8. USDA's failure to make available complete and transparent information, even in redacted form, is arbitrary and capricious, contrary to its obligations under the Information Quality Act, Section 515 of Public Law 106-554, 44 U.S.C. §

9

3516, note, and the information quality guidelines issued by the Office of Management and Budget, 67 Fed. Reg. 8459-60 (Feb. 22, 2002) and USDA (*http://www.ocio.usda.gov/qi_guide*), and violates Appellant's due process rights.[4]

### F. USDA Did Not Assess Based On Statutory Factors.

R-13 and R (App) - 11 were each purportedly based on Appellant's share of "Volume of Gross Sales." However, the Act does not authorize assessments on the basis of "Volume of Gross Sales." Therefore, these assessments were improper and illegal.

### G. USDA Improperly Incorporated Loan Collateral Liquidation Costs Into TTPP Assessment CR05300004.

USDA improperly included losses from liquidation of loan collateral as part of R (App) - 11. Loan losses should have been amortized in the same manner and fashion as the direct buy-out payments, over the entire ten year period of the liquidation program. Instead, USDA improperly characterized loan losses as an operating expense, and wrongly assessed Appellant and others as if those losses were a one-time, non-recurring charge.

## IV. RELIEF REQUESTED

Appellant requests the following relief.

1. Remand for recalculation in compliance with the Act, which prohibits assessment "in excess of the manufacturer's or importer's share of domestic volume," and requires USDA to calculate market share using removed volume to appropriately differentiate between "small" and "large" cigars.

---

[4] On or about September 13, 2005, Appellant filed (via certified mail) an IQA Petition with USDA. Although a response was due on or before November 13, 2005, USDA never responded. Taking USDA's failure to respond as a denial of the September 13, 2005 request, Appellant filed a Request for Reconsideration on December 20, 2005. To date, USDA has not responded.

2. Alternatively, remand for recalculation using the A. C. Nielsen data, the only reliable, competent, and testable market data in the record. Based on this data, Appellant's market share should be assessed at between 1.05% and 2.5%.

3. Cancellation of all interest charges.

4. Amortization of losses from liquidation of loan collateral in the same manner and fashion as the direct buy-out payments, over the entire ten year period of the liquidation program.

Respectfully submitted,

*/s/ Donald S. Stein*
Donald S. Stein
Reed D. Rubinstein
Greenberg Traurig, LLP
800 Connecticut Avenue, N.W.
Washington, DC 20006
(202) 331-3100

Date: January 18, 2006

Attachments

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Pre-Hearing Statement was hand-delivered, faxed, and emailed, this 18th day of January, 2006 to:

John M. Truluck, Director
c/o Jane Reed
USDA/FSA/Tobacco Division
Room 4080-S, Stop 0514
1400 Independence Avenue, SW
Washington, D.C. 20250
Jane.reed@wdc.usda.gov

Charles M. Berge, Hearing Officer
United States Department of Agriculture
Farm and Foreign Agricultural Services
1400 Independence Avenue, SW
Washington, D.C. 20250
Charles.berge@wdc.usda.gov

Reed D. Rubinstein