# Rules and Regulations

**Federal Register**

Vol. 73, No. 83

Tuesday, April 29, 2008

This section of the FEDERAL REGISTER contains regulatory documents having general applicability and legal effect, most of which are keyed to and codified in the Code of Federal Regulations, which is published under 50 titles pursuant to 44 U.S.C. 1510.

The Code of Federal Regulations is sold by the Superintendent of Documents. Prices of new books are listed in the first FEDERAL REGISTER issue of each week.

---

## DEPARTMENT OF AGRICULTURE

**Commodity Credit Corporation**

**7 CFR Part 1463**

**RIN 0560–AH79**

**Tobacco Transition Payment Program; Release of Records**

**AGENCY:** Commodity Credit Corporation, USDA.

**ACTION:** Final rule.

**SUMMARY:** The Commodity Credit Corporation (CCC) is revising the Tobacco Transition Payment Program (TTPP) regulations to expand the information provided in quarterly notices to tobacco manufacturers and importers about the assessments due to CCC. Assessments are based on market shares, CCC has concluded that certain information formerly not included may be included in future assessment notices and released. Specifically, CCC will release to reporting manufacturers and importers the qualifying market share of other manufacturers and importers, for the relevant class of tobacco product, based solely on information supplied by the reporting manufacturer or importer to CCC.

**DATES:** *Effective Date:* April 29, 2008.

**FOR FURTHER INFORMATION CONTACT:** Jane Reed, Agricultural Economist, Economic and Policy Analysis Staff, Farm Service Agency (FSA), United States Department of Agriculture (USDA), Stop 0515, 1400 Independence Ave., SW., Washington, DC 20250–0510. Phone: (202) 720–6782; fax: (202) 720–8120; e-mail: *Jane.Reed@wdc.usda.gov.* Persons with disabilities who require alternative means for communication (Braille, large print, audio tape, etc.) should contact the USDA Target Center at (202) 720–2600 (voice and TDD).

**SUPPLEMENTARY INFORMATION:**

### Background and Discussion

TTPP was established by Title VI, the ''Fair and Equitable Tobacco Reform Act'' (FETRA) of the American Jobs Creation Act of 2004 (Pub. L. 108–357). FETRA repealed the tobacco marketing quota and related price support programs authorized by both Title III of the Agricultural Adjustment Act of 1938 and by the Agricultural Act of 1949 and provided for payments to persons who, during a certain period or at a certain time, had been the owners of farms with tobacco quotas or had produced regulated tobacco. FETRA is funded using assessments collected from tobacco manufacturers and importers.

Under FETRA, CCC sends out quarterly notices to tobacco manufacturers and importers, informing those entities of the assessments due to CCC. Each notice also provides the entity with certain information, described at 7 CFR 1463.8. Assessments within classes of products are based on market shares, as calculated pursuant to FETRA. Prior to the issuance of this final rule, CCC had not included in its assessment notices data concerning the market share of each other manufacturer or importer for each applicable class of tobacco product even though such information is referenced in section 625 of FETRA, 7 U.S.C. 518d, specifically in section 625(d)(2)(G) of FETRA. This was because market share calculations are based on the filing by reporting parties of copies of certain tax returns filed with the U.S. Department of the Treasury (Treasury) and the Department of Homeland Security (DHS). Previously, in the preamble to a final rule published in the **Federal Register** on February 10, 2005 (70 FR 7007–7014), CCC explained that, after consultation with Treasury it had determined that market share data would not be included in the assessment notices because of the confidentiality provision of 26 U.S.C. 6103 regarding tax return information filed with Treasury. However, after further consultation, it has been determined that market share data may be included in the quarterly assessments without objection under section 6103 so long as the market share information supplied is limited to information supplied to CCC by those tobacco manufacturers and importers reporting to CCC. Accordingly, the TTPP regulations are changed in this final rule. Because of administrative changes that are needed, CCC does not expect routine inclusion of this data in quarterly assessment notices before the September 2008 assessments.

### Miscellaneous Correction

In addition to the change discussed above, CCC is correcting the CCC point of contact information in the definition section (7 CFR 1463.3).

### Notice and Comment

These regulations are exempt from the notice and comment requirements of the Administrative Procedure Act (5 U.S.C. 553), as specified in section 642(b) of FETRA, which requires that the regulations be promulgated and administered without regard to the notice and comment provisions of section 5 of title 5 of the United States Code or the Statement of Policy of the Secretary of Agriculture effective July 24, 1971, (36 FR 13804) relating to notices of proposed rulemaking and public participation in rulemaking.

### Executive Order 12866

This rule has been determined to be not significant under Executive Order 12866 and has not been reviewed by the Office of Management and Budget.

### Regulatory Flexibility Act

This rule is not subject to the Regulatory Flexibility Act since CCC is not required to publish a notice of proposed rulemaking for this rule.

### Environmental Review

The environmental impacts of this rule have been considered in a manner consistent with the provisions of the National Environmental Policy Act of 1969 (NEPA), 42 U.S.C. 4321–4347, the regulations of the Council on Environmental Quality (40 CFR parts 1500–1508), and FSA regulations for compliance with NEPA (7 CFR part 799). The following final rule was determined to be Categorically Excluded. Therefore, no environmental assessment or environmental impact statement will be completed for this final rule.

### Executive Order 12372

This program is not subject to Executive Order 12372, which requires consultation with State and local officials. See the notice related to 7 CFR part 3015, subpart V, published in the

Federal Register on June 24, 1983 (48 FR 29115).

### Executive Order 12612

This rule does not have Federalism implications that warrant the preparation of a Federalism Assessment. This rule will not have a substantial direct effect on States or their political subdivisions or on the distribution of power and responsibilities among the various levels of government.

### Executive Order 12988

This final rule has been reviewed under Executive Order 12988. This final rule is not retroactive and it does not preempt State or local laws, regulations, or policies unless they present an irreconcilable conflict with this rule. Before any judicial action may be brought regarding the provisions of this rule the administrative appeal provisions of 7 CFR parts 11 and 780 must be exhausted.

### Federal Assistance Program

The title and number of the Federal assistance program as found in the Catalog of Federal Domestic Assistance, to which this rule applies, are: Commodity Loans and Purchases—10.051.

### Unfunded Mandates

This rule contains no Federal mandates under the regulatory provisions of Title II of the Unfunded Mandates Reform Act (UMRA) for State, local, and tribal government or the private sector. In addition, CCC was not required to publish a notice of proposed rulemaking for this rule. Therefore, this rule is not subject to the requirements of sections 202 and 205 of UMRA.

### Small Business Regulatory Enforcement Fairness Act of 1996 (SBREFA)

Section 642(c) of FETRA requires that the Secretary use the authority in section 808 of the Small Business Regulatory Enforcement Fairness Act of 1996 (Pub. L. 104–121) (SBREFA), which allows an agency to forgo SBREFA's usual 60-day Congressional Review delay of the effective date of a major regulation if the agency finds that there is a good cause to do so. Accordingly, this rule is effective on the date of publication in the **Federal Register**.

### Paperwork Reduction Act

These regulations are exempt from the requirements of the Paperwork Reduction Act (44 U.S.C. Chapter 35), as specified in section 642(b) of FETRA, which provides that these regulations, which are necessary to implement FETRA, be promulgated and administered without regard to the Paperwork Reduction Act.

### E-Government Act Compliance

CCC is committed to complying with the E-Government Act, to promote the use of the Internet and other information technologies to provide increased opportunities for citizen access to Government information and services, and for other purposes.

### List of Subjects in 7 CFR Part 1463

Agriculture, Agricultural commodities, Acreage allotments, Marketing quotas, Price support programs, Tobacco, Tobacco Transition Program.

■ For the reasons provided above, amend part 1463 of title 7 of the Code of Federal Regulation as follows:

### Chapter XIV—Commodity Credit Corporation, Department of Agriculture

### PART 1463—2005–2014 TOBACCO TRANSITION PROGRAM

■ 1. The authority citation for part 1463 continues to read as follows:

**Authority:** 7 U.S.C. 714b and 714c; and Title VI of Pub. L. 108–357.

■ 2. Amend § 1463.3 by revising the definition of *CCC's point of contact* to read as follows:

### § 1463.3   Definitions.

\*   \*   \*   \*   \*

*CCC's point of contact* means, for items physically sent to CCC, ''Fibers, Peanuts, and Tobacco Analysis Group, Economic and Policy Analysis Staff, Farm Service Agency, United States Department of Agriculture (USDA), STOP 0515, Room 3720–S, 1400 Independence Avenue, SW., Washington, DC 20250–0515'' unless otherwise specified by CCC through actual notice.

\*   \*   \*   \*   \*

■ 3. Amend § 1463.8 by redesignating paragraphs (b)(8) and (b)(9) as paragraphs (b)(9) and (b)(10), respectively, and adding a new paragraph (b)(8) to read as follows:

### § 1463.8   Notification of assessments.

\*   \*   \*   \*   \*
(b) \* \* \*

(8) Beginning with the 2nd quarter of 2008, or as soon as practicable thereafter, the applied market share for that quarter of each other manufacturer and importer, for the applicable class of tobacco product of those manufacturers and importers that have provided such information to CCC in accordance with the provisions of § 1463.6, as determined by the Deputy Administrator, Farm Service Agency.

\*   \*   \*   \*   \*

Signed at Washington, DC, April 23, 2008.
**Teresa C. Lasseter,**
*Executive Vice President, Commodity Credit Corporation.*
[FR Doc. E8–9295 Filed 4–28–08; 8:45 am]
**BILLING CODE 3410–06–P**

## DEPARTMENT OF HEALTH AND HUMAN SERVICES

### Food and Drug Administration

### 21 CFR Part 510

### New Animal Drugs; Change of Sponsor's Name

**AGENCY:** Food and Drug Administration, HHS.
**ACTION:** Final rule.

**SUMMARY:** The Food and Drug Administration (FDA) is amending the animal drug regulations to reflect a change of sponsor's name from Halocarbon Laboratories, Division of Halocarbon Products Corp., to Halocarbon Products Corp.
**DATES:** This rule is effective April 29, 2008.
**FOR FURTHER INFORMATION CONTACT:** David R. Newkirk, Center for Veterinary Medicine (HFV–100), Food and Drug Administration, 7500 Standish Pl., Rockville, MD 20855, 240–276–8307, e-mail: *david.newkirk@fda.hhs.gov.*
**SUPPLEMENTARY INFORMATION:** Halocarbon Laboratories, Division of Halocarbon Products Corp., 887 Kinderkamack Rd., P.O. Box 661, River Ridge, NJ 07661, has informed FDA that it has changed its name to Halocarbon Products Corp. Accordingly, the agency is amending the regulations in 21 CFR 510.600(c) to reflect these changes. FDA is also correcting the sponsor's address in the regulation.

This rule does not meet the definition of ''rule'' in 5 U.S.C. 804(3)(A) because it is a rule of ''particular applicability.'' Therefore, it is not subject to the congressional review requirements in 5 U.S.C. 801–808.

### List of Subjects in 21 CFR Part 510

Administrative practice and procedure, Animal drugs, Labeling, Reporting and recordkeeping requirements.

■ Therefore, under the Federal Food, Drug, and Cosmetic Act and under authority delegated to the Commissioner of Food and Drugs and redelegated to